## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARK A. KUZMA,                          )
                                        )
    Plaintiff,      )
                                        )
    v.              )   2:10cv1433
                                        )   **Electronic Filing**
MBNA INSTITUTIONAL PA                   )
SERVICES, LLC,                          )
                                        )
    Defendant.       )

### MEMORANDUM OPINION

March 5, 2013

## I. INTRODUCTION

Plaintiff, Mark A. Kuzma ("Kuzma" or "Plaintiff"), filed a two (2) count Complaint

alleging violations of his rights under the Age Discrimination in Employment Act (the

"ADEA"), 29 U.S.C. § 621 et seq., and the Pennsylvania Human Relations Act (the "PHRA"),

43 PA. CONS. STAT. ANN. § 951 et seq., by MBNA Institutional PA Services, LLC ("MBNA" or

"Defendant").  MBNA has filed a motion for summary judgment, Kuzma has responded and the

matter is now before the Court.

## II. STATEMENT OF THE CASE

Kuzma began his employment with Mellon Bank N.A. in July of 1992. MBNA Concise

Statement of Undisputed Material Facts ("MBNA SUMF") ¶ 2; Kuzma Counter Statement of

Material Facts ("Kuzma SMF") ¶ 3.  Mellon Financial Corporation, by merger with The Bank of

New York Company, Inc., became The Bank of New York Mellon Corporation ("BNY

Mellon"), the parent company of MBNA.  Kuzma SMF ¶ 3.  As a result of the merger, Kuzma's

position was eliminated on August 15, 2007.  Kuzma SMF ¶ 6; MBNA SUMF ¶¶ 5, 7.

On November 9, 2008, Kuzma was hired by MBNA as Director, Pension and Fund Investment. Kuzma SMF ¶ 10; MBNA SUMF ¶ 7. Kuzma was fifty-one (51) years of age when he was hired by MBNA. MBNA SUMF ¶ 8. At the time relevant to this action, Kuzma reported to Kevin Piccoli ("Piccoli"), Head of Corporate Consulting who, in turn, reported to David McCormish ("McCormish"), Chief Operating Officer-Finance. MBNA SUMF ¶ 10. McCormish reported directly to MBNA's CFO, Todd Gibbons. MBNA SUMF ¶ 11. In his role as managing Director, Kuzma managed Jesse Pasko ("Pasko"), Senior Investment Analyst, Karen Billingham "Billingham", a resource consultant, and Nicholas Rotunno (Rotunno"), a temporary employee. Kuzma SMF ¶ 22; MBNA SUMF ¶ 13. Kuzma and his staff were responsible for providing investment information to the Benefits Investment Committee ("BIC"). MBNA SUMF ¶ 14.

BNY Mellon and its subsidiaries subscribe to a Code of Conduct which sets forth values and principles that all employees must follow. In relevant part, the Code of Conduct provides:

> One of our values is Teamwork and nothing damages a team more quickly than a lack of mutual respect. . . . You're expected to treat your fellow employees professionally – it's what we owe each other in the workplace. . .
>
> You must contribute to maintaining a workplace free of aggression. Threats, intimidating behavior or any acts of violence will not be tolerated. . .
>
> Managers must foster an environment of integrity, honesty and respect. This includes creating a work environment that is free from discrimination, harassment, intimidation or bullying of any kind. This type of behavior will not be tolerated and is inconsistent with our values and the Code of Conduct.

MBNA SUMF ¶¶ 15 & 17; MBNA Appendix Tab C – Nos. D-0018 & D-0021.

On May 11, 2007, Kuzma argued with a co-worker during a business discussion regarding different ways to resolve a segregation of duties issue in order to avoid potential regulatory criticism. MBNA SUMF ¶ 24. At the time of the incident, Kuzma's supervisor was J.

David Thompson ("Thompson").  MBNA SUMF ¶ 4.  On May 18, 2007, Thomson discussed the

incident with Kuzma and documented the discussion as follows:

> We have spoken with all three of the participants in this meeting.
> The three of you have agreed on the facts of the matter: during a
> business discussion which was held around a situation involving
> Collective Funds, you lost your temper and displayed conduct
> which was unprofessional and inappropriate.
>
> Specifically, you made disparaging and hurtful comments to your
> co-workers, thus eroding the teamwork which is critical to the
> success of the relationship. The teamwork concept between our
> group and the LOB risk and compliance employees is an absolute
> necessity, as you well know.
>
> This incident is not the first time you have displayed
> unprofessional conduct which eroded the concept of teamwork.
> You have been coached and counseled on this subject on at least
> six occasions by me personally, including specific feedback on
> your annual performance appraisal.
>
> This meeting is to advise you in the strongest terms that any further
> incident of this type, or any type of inappropriate conduct in the
> workplace[,] will result in, at minimum, a final written warning of
> corrective action.

MBNA Appendix Tab C – No. D-0116.  When given an opportunity to comment at the meeting,

Kuzma stated: "I deserve this.  Even though I have said this before, I promise you this won't

happen again." *Id.*   Kuzma admitted to two (2) additional incidents of unprofessional conduct.

In March of 2009, Kuzma raised his voice at Nick Rotunno regarding Rotunno's refusal to work

on Saturdays, and in August of 2009 he raised his voice at Pasko and smacked his hand on a

conference table because Kuzma believed Pasko was not responding to his question. MBNA

SUMF ¶¶ 28 & 29.

In or around August of 2009, Pasko was assigned the task to research and prepare a draft

investment report for a BIC meeting scheduled for September 1, 2009.  MBNA SUMF ¶¶ 31 &

32.  It was Kuzma's policy to submit the report to the BIC on the weekend prior to the BIC

meeting.  Kuzma SMF ¶ 33.  Pasko did not submit the draft report until approximately 9:30 p.m.

on Sunday, August 30, 2009. Kuzma SMF ¶ 48.  In addition to submitting the report to Kuzma,

Pasko e-mailed the draft report to in-house counsel Bennett Josselsohn, outside counsel Susan

Serota, a member of the BIC who was asking for a copy of the report.  Kuzma SMF ¶ 49;

MBNA SUMF ¶34.

Kuzma reviewed the report on Monday morning and found that it contained errors.

Kuzma SMF ¶ 50.  At approximately 9:37 a.m. on August 31, 2009, Kuzma sent an e-mail to

Pasko, with copies to Piccoli and to both in-house and outside counsel, that stated: "There are a

number of mathematical problems with the underlying charts. I am going to try and fix them all.

Evidently, the work was not checked before release."  MBNA SUMF ¶ 34.  Pasko responded to

the e-mail at approximately 9:58 a.m. stating, in relevant part: ".  .  . You could have stated that

there were some adjustments to be made in the rounding function. You choose to be

unprofessional, I'd like to discuss this with H.R."  MBNA SUMF ¶ 36.

Kuzma admitted that after he read Pasko's e-mail he felt Pasko was insubordinate and he

became angry. MBNA SUMF ¶ 41.  Kuzma decided to see Pasko face to face and went to

Pasko's office. Kuzma Deposition, p. 145.  When he arrived at Pasko's office, Kuzma threw the

BIC report on his desk and got into an extended, very loud verbal confrontation with Pasko.

MBNA SUMF ¶¶ 44 & 45.  Pasko testified that Kuzma slammed the report on his desk and said:

"There's 60 f---ing million dollars missing from this document .  .  ." and proceeded to pound his

hand on the desk.  Pasko Deposition, p. 55.  Several employees witnessed the incident, and one

employee, Beth Sarraco, was so affected she called Security. MBNA SUMF ¶¶ 48 & 49.

Employees, David Nesbit and Cathy Fabry, reported the incident to McCormish, who then

notified Employee Relations and Human Resources about the incident.  MBNA SUMF ¶ 49.

Human Resources conducted an investigation of the August 31, 2009, incident involving

Kuzma and Pasko.  MBNA SUMF ¶ 51.  Carl Melella ("Melella"), Global Head of Employee

Relations, and Michael Payne (Payne"), HR Consultant, met with Kuzma on September 2, 2009, to discuss the incident. MBNA SUMF ¶ 52. Human Resources personnel also interviewed Pasko, Billingham, Fabry, Sarraco, Darnell Jackson and Dave Mirkovich. MBNA SUMF ¶ 53. Payne reported the findings of the investigation to Todd Gibbons, McCormish, Piccoli, and Melella, on or about September 3, 2009. MBNA SUMF ¶ 60. That same day, Mary Lou Zink, Managing Director of Human Resources, informed Gibbons and McCormish of Kuzma's prior reprimands regarding incidents of inappropriate and unprofessional behavior. MBNA SUMF ¶ 61.

Gibbons, McCormish and Piccoli discussed the incident and subsequent investigation on September 3, 2009. Piccoli Deposition pp. 56 & 68; Gibbons Deposition p. 22. Because of Kuzma's history of inappropriate conduct and the severity of the incident with Pasko on August 31st, the decision was made to terminate Kuzma. Piccoli Dep. pp. 68 & 69; Gibbons Dep. pp. 22, 25-26; Kuzma SMF ¶ 98. On September 4, 2009, Kuzma was terminated from his position with MBNA. MBNA SUMF ¶ 62. Gibbons specifically testified that there were no discussions about Kuzma's age or tenure prior to the decision to terminate Kuzma's employment. Gibbons Dep. p.33. Piccoli also testified that no one involved in the decision-making process, including Payne and Zink, ever discussed or mentioned Kuzma's age. Piccoli Dep. 83.

## III.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.,* one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim.

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

**IV.    DISCUSSION**

Kuzma contends that MBNA violated his rights under the ADEA and the PHRA when he was terminated because of his age[1].  The ADEA prohibits employers from discriminating against individuals in hiring, discharge, compensation, term, conditions, or privileges of employment on the basis of their age. *See* 29 U.S.C. § 623(a)(1). A plaintiff can sustain a claim of discrimination under the ADEA by presenting either direct or circumstantial evidence of discrimination. *See Duffy v. Magic Paper Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001).  Because Kuzma has not provided direct evidence of discrimination, our inquiry under both statutes is governed by the three-part framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, (1973) (the "McDonnell Douglas analysis"). *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (reaffirming the use of the *McDonnell Douglas* analysis in ADEA cases involving indirect evidence).

Under the McDonnell Douglas analysis, once the employee establishes a *prima facie* case of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802. If the employer makes that showing, the burden of production shifts once again to the employee to establish that the employer's proffered justification for the adverse action is pretextual. *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 254-255 (1981). Throughout this burden-shifting exercise, the burden of persuasion remains on the employee. *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 n.4 (3d Cir. 1995) (citing *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. at 253).

---

[1]    There is no need to differentiate between Kuzma's ADEA and PHRA claims as the same analysis is used for both. *See, e.g., Simpson v. Kay Jewelers*, 142 F.3d 639, 643-44 & n.4 (3d Cir. 1998); *Fairfield Township Volunteer Fire Co. No. 1 v. Commonwealth*, 609 A.2d 804, 805 (Pa. 1992).

7

Kuzma, therefore, bears the initial burden of establishing a *prima facie* case of discrimination. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006); *Atkinson v. LaFayette College*, 460 F.3d 447, 454 (3d Cir. 2006). To establish a *prima facie* case, Kuzma must demonstrate that: (1) he is a member of the protected class, *i.e.* at least 40 years of age; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) that he was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Smith v. City of Allentown*, 589 F.3d at 689 (citing *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004). To establish a *prima facie* case at summary judgment, "the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] *prima facie* case." *Duffy v. Paper Magic Grp.*, 265 F.3d 163, 167 (3d Cir. 2001). MBNA concedes for the purpose of this motion only that Kuzma can show a *prima facie* case of age discrimination.

The burden now shifts to MBNA to offer a legitimate non-discriminatory reason for terminating Kuzma. *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997); *Simpson v. Kay Jewelers*, 142 F.3d at 644 n.5. This burden is "relatively light" and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason. *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)); *see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012) (describing this step as a "minimal burden").

The Court finds that MBNA has met its burden. MBNA has produced evidence that Kuzma had a history of inappropriate and unprofessional conduct. On May 11, 2007, Kuzma argued with a co-worker during a business discussion regarding different ways to resolve a segregation of duties issue in order to avoid potential regulatory criticism. MBNA SUMF ¶ 24.

8

Kuzma's supervisor at that time, David Thompson , discussed the incident with Kuzma and informed Kuzma:

> This incident is not the first time you have displayed unprofessional conduct which eroded the concept of teamwork. You have been coached and counseled on this subject on at least six occasions by me personally, including specific feedback on your annual performance appraisal.
>
> This meeting is to advise you in the strongest terms that any further incident of this type, or any type of inappropriate conduct in the workplace[,] will result in, at minimum, a final written warning of corrective action.

MBNA Appendix Tab C – No. D-0116. Kuzma admitted to two (2) additional incidents of unprofessional conduct. In March of 2009, Kuzma raised his voice at Nick Rotunno regarding Rotunno's refusal to work on Saturdays, and in August of 2009, he raised his voice at Pasko and smacked his hand on a conference table because Kuzma believed Pasko was not responding to his question. MBNA SUMF ¶¶ 28 & 29. Finally, Gibbons, McCormish and Piccoli determined that the incident with Pasko on August 31, 2009, was so severe that, considering Kuzma's history, termination was "the appropriate response." Gibbons Dep. p. 22.

Kuzma, therefore, must show that MBNA's articulated reason for his termination is merely a pretext for age discrimination. Kuzma may demonstrate that MBNA's legitimate nondiscriminatory reason is pretextual by submitting evidence that allows a factfinder to either 1) disbelieve or discredit the employer's justification; or 2) believe discrimination was more likely than not a "but for" cause of the adverse employment action. *Abels v. Dish Network Serv., LLC*, 2012 U.S. App. LEXIS 25384, 9-10 (3d Cir. Pa. Dec. 12, 2012)(citing *Fuentes v. Perskie*, 32 F.3d at764). *See also Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177-178 (2009). Evidence undermining an employer's proffered legitimate reasons must be sufficient to "support an inference that the employer did not act for its stated reasons." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir. 1995).

In order to discredit MBNA's proffered justification under the first prong of *Fuentes*, Kuzma must present evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies (sic), or contradictions" in MBNA's proffered reasons "that a reasonable factfinder could rationally find them unworthy of credence," and ultimately infer that MBNA did not act for the asserted nondiscriminatory reasons. *Fuentes v. Perskie*, 32 F.3d at 765. If Kuzma's evidence rebutting MBNA's proffered reason permits a factfinder to conclude that such reason (or reasons) was either a "post hoc fabrication" or otherwise did not actually prompt the employment action, then summary judgment is inappropriate. *Fuentes v. Perskie*, 32 F.3d at 764.

Alternatively, Kuzma must show that age-based discrimination was a "but-for" cause of MBNA's decision to terminate him. To meet this burden, Kuzma "cannot simply show that [MBNA's] decision was wrong or mistaken." *Fuentes v. Perskie*, 32 F.3d at 765. The question is whether MBNA was motivated by a discriminatory animus, not whether MBNA was wise, shrewd, prudent, or competent. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531, 533 (3d Cir. 1992); *Villanueva v. Wellesley College*, 930 F.2d 124, 131 (1st Cir.), *cert. denied*, 502 U.S. 861 (1991). *See also Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) ("[A]n employer may have any reason or no reason for discharging an employee so long as it is not a discriminatory reason.").

Kuzma attempts to establish that MBNA's proffered reason for his termination was a pretext for age discrimination by showing that a similarly situated, significantly younger employee, Pasko, was treated more favorably. Specifically, Kuzma contends that (1) Pasko intentionally delayed the BIC report in violation of MBNA's Code of Conduct but was not terminated; (2) Pasko engaged in the same behavior as Kuzma but was treated more favorably; and (3) MBNA ignored Pasko's conduct when investigating the August 31, 2009 incident.

The Third Circuit has instructed that under the McDonnell Douglas analysis, a plaintiff is not permitted to simply selectively choose a comparator in order to show differing treatment among protected and non-protected group members[2]. *See Simpson v. Kay Jewelers*, 142 F.3d at 645. *See also Donlin v. Philips Lighting N. Am. Corp.,* 581 F.3d 73, 90 (3d Cir. 2009) (plaintiff could not selectively "pick and choose" a comparator for purposes of computing damages under Title VII, rather plaintiff must choose similar employees against whom to compare herself). To be deemed similarly situated, the comparator must be roughly equivalent to the person in question. *Gazarov v. Diocese of Erie*, 80 Fed. App'x. 202, 205 (3d Cir. Pa. 2003) (citation omitted).

Clearly, "similarly situated" employees need not be "identically situated" in order to be valid comparators. *See Bennun v. Rutgers State Univ.*, 941 F.2d 154, 178 (3d Cir. 1991). Courts have recognized, however, that in order for an co-employee to be an appropriate comparator he or she should hold a similar position, report to the same supervisor, possess a similar disciplinary record, and engage in the same type of misconduct as the plaintiff. *Hodczak v. Latrobe Specialty Steel Co.*, 761 F. Supp. 2d 261, 269 (W.D. Pa. 2010); *See also, e.g., Opsatnik v. Norfolk Southern Corp.*, 335 F. App'x. 220, 223 (3d Cir. 2009) (non-precedential opinion) ("Which factors are relevant [in discerning whether an individual is similarly situated] is determined by the context of each case, but often includes a 'showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without

---

[2]   In *Kay Jewelers*, the Third Circuit found that allegations concerning the treatment of one younger employee were insufficient as a matter of law to infer age discrimination. *Id.* at 645.The determination of whether an employer's actions support an inference of discrimination is to be made based on the treatment of the allegedly more favored group as a whole, such that a showing of preferential treatment to one member of the non-protected class, standing alone, is generally not sufficient to create an inference of discrimination. *See id.* at 645-46*; see also McDonnell Douglas*, 411 U.S. at 804 (employer's actions are prohibited only if based on criteria applied to members of all races). If the use of a single comparator is insufficient to raise an inference of age discrimination, it is also inadequate to establish pretext.

such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'"(internal citations omitted)); *Martin v. Pachulski, Stang, Ziehl, Young & Jones, P.C.*, 551 F. Supp. 2d 322, 329 n.2 (D. Del. 2008) (employees who did not hold the same positions were not comparably situated); *Robinson v. PFPC, Inc.*, 2010 U.S. Dist. LEXIS 19303, 2010 WL 744191, at *5 (E.D. Pa. Mar. 4, 2010); *Dawson v. Harran*, No. 08-7, 2009 U.S. Dist. LEXIS 69428, 2009 WL 2431343, at *6 (E.D. Pa. Aug. 6, 2009) (co-workers who did not share the same supervisor, where employed for a longer period of time, and did not hold equivalent title could not be used as comparators.

In this instance, the evidence of record shows that the characteristics of Kuzma's employment differ from Pasko's on several grounds. First, Kuzma was the Director, Pension and Fund Investment for MBNA, a management position. Pasko, on the other hand, was one of the employees managed by Kuzma. At BNY Mellon, Managers are required to "foster an environment of integrity, honesty and respect" and to create "a work environment that is free from discrimination, **harassment, intimidation or bullying of any kind**. *See* MBNA Appendix Tab C – Nos. D-0021 (emphasis added). Pasko, therefore, did not hold a similar employment position with MBNA as Kuzma. Obviously then, Pasko and Kuzma did not report to the same supervisor. At the time of the incident, Pasko reported to Kuzma, while Kuzma reported to Piccoli.

Kuzma also fails to show that he and Pasko had similar disciplinary records. Kuzma had a history of documented incidents of inappropriate and unprofessional conduct. After one such incident, Kuzma was told by his supervisor that he had been "coached and counseled on [his unprofessional conduct] on at least six occasions . . . any further incident of this type, or any type of inappropriate conduct in the workplace[,] will result in, at minimum, a final written warning of corrective action." MBNA Appendix Tab C – No. D-0116. There is no evidence in

the record that Pasko had any documented incidents of inappropriate and unprofessional

behavior. Though Kuzma contends that Pasko used profanity and raised his voice to co-workers,

there is no evidence that such incidents were reported[3] or that Pasko was disciplined by MBNA.

Moreover, there is absolutely no evidence that Pasko's conduct was so severe that co-workers

had to call security or that co-workers felt unsafe.

Kuzma's contention that he and Pasko engaged in similar conduct on August 31, 2009, is

also unavailing. Kuzma argues that Pasko slammed his office door and yelled at Kuzma during

the incident at issue, but was not disciplined. Even if the allegations of Pasko's conduct are true,

Kuzma initiated the confrontation and his aggressive conduct instigated a similar response.

Kuzma testified that he wanted to deal with Kuzma face to face. Kuzma Deposition, p. 145. He

went to Pasko's office, threw the BIC report on his desk and got into an extended, loud verbal

confrontation with Pasko. MBNA SUMF ¶¶ 44 & 45. Clearly, if Pasko did in fact engage in

misconduct similar to Kuzma's on August 31, 2009, the record evidence supports a finding of

differentiating or mitigating circumstances that distinguishes his conduct from Kuzma's, and

therefore, explains any dissimilar treatment by MBNA. In light of these distinguishing

employment factors, Kuzma has failed to show that Pasko was "similarly situated" for purposes

of establishing a pretext for age discrimination.

The record reflects that MBNA terminated Kuzma based not only on the events of

August 31, 2009, but also because he had a history of inappropriate and unprofessional conduct.

There is no evidence that there were any discussions among the decision-makers regarding

Kuzma's age or tenure prior to the decision to terminate Kuzma's employment. Moreover, there

is no evidence that would allow Kuzma to rely upon Pasko as "similarly situated" in order to

establish pretext. *See i.e. Fatzinger v. Lehigh Valley Hospital*, 674, 679 n.2 (E.D. Pa. 2000);

---

[3]    At the relevant time, Kuzma was Pasko's supervisor and failed to document such incidents or
reprimand Pasko for his alleged behavior.

*Osuala v. Community College of Philadelphia*, 2000 U.S. Dist. LEXIS 11609, *21 (E.D. Pa. Aug. 15, 2000). The Court, therefore, finds that no reasonable jury could conclude, based on this comparison evidence, that MBNA's proffered reason for Kuzma's termination was pretextual.

This Court is unable to find any evidence in the record that would either cast doubt on the veracity of MBNA's proffered reason or suggest that the proffered reason was merely a pretext for discrimination. Accordingly, Kuzma's age discrimination claim fails as a matter of law.


V.      CONCLUSION

The Court finds that there are no material facts in dispute, Kuzma is unable to show that that MBNA violated his rights under the ADEA or the PHRA. Accordingly, MBNA's motion for summary judgment shall be granted. An appropriate order will follow.


                                        s/ David Stewart Cercone
                                        David Stewart Cercone,
                                        United States District Judge

cc:     Colleen Ramage Johnston, Esquire
        Nikki Velisaris Lykos, Esquire
        Catherine S. Ryan, Esquire
        Kimberly A. Craver, Esquire

        (*Via CM/ECF Electronic Mail*)